IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| TIM WRIGHT,<br><br>    Plaintiff,<br><br>v.<br><br>REALPAGE, INC. d/b/a LEASINGDESK SCREENING,<br><br>    Defendant. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff Tim Wright ("Plaintiff") brings this action on an individual basis, seeking statutory and other damages against Defendant RealPage, Inc. d/b/a LeasingDesk Screening ("LEASINGDESK") and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1. This is an action to recover damages for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

2. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681a.

3. To that end, the FCRA imposes the following duty on consumer reporting agencies: consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports.

4. The FCRA provides consumers with a private right of actions against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

5. Defendant LEASINGDESK has produced and sold consumer reports concerning Plaintiff's background that wrongfully reported a charged-off collections account that does not belong to Plaintiff.

6. As a result of LEASINGDESK's wrongful reporting, Plaintiff was damaged by, without limitation, loss of employment, suffering harm to her employment qualifications, loss of income, and considerable stress and anguish.

## PARTIES

7. Plaintiff is a natural person and resident of the State of Louisiana and qualifies as a "consumer" as defined and protected by the FCRA.

8. Defendant RealPage, Inc. d/b/a LeasingDesk Screening ("LEASINGDESK") is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f), as it "regularly engages in whole or in part in the practice of assembling or evaluating credit information or other information on consumers for the purpose of furnishing consumer reports to third parties" in exchange for monetary compensation, by means of interstate commerce. Defendant LEASINGDESK is a Delaware corporation that maintains its primary place of business at 2201 Lakeside Blvd, Richardson, Texas 75082.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. Defendant regularly conducts business within the State of Louisiana, and violated Plaintiff's rights under the FCRA in the State of Louisiana as alleged more fully below.

10. Venue is proper in this District under 28 U.S.C. 1391(b) because Plaintiff resides in this District, Defendant conduct regular business in this District, and communications giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

11. Sometime prior to December of 2022, Plaintiff applied for new housing with The Genesis Lafayette ("Genesis").

12. As part of his application, Plaintiff consented that Genesis could obtain a background consumer reporting regarding himself. Genesis then contracted with Defendant to procure this report.

13. In early January of 2023, Plaintiff was informed by Genesis that he was being denied housing due the results of his background check. Genesis indicated that a primary reason for his denial was the reporting of an outstanding utility bill that was referred to collections that was being reported by Defendant.

14. Plaintiff requested that Genesis send him a copy of the report provided by Defendant.

15. Plaintiff was shocked and confused to discover that under the report's "Financial detail" section was indeed a NOPSI- LP&L Utility-Electric account, account ending in 7175, opened in December of 2019 and listed as "Collection, Charged off account".

16. NOPSI is the New Orleans Public Service Inc., the utility company servicing New Orleans. However, *Plaintiff has never lived in New Orleans*, and this account does not belong to him.

17. As a direct result of Defendant's inaccurate reporting, Plaintiff has been damaged.

18. Because of the inaccurate information provided to Plaintiff's prospective housing by Defendant, Plaintiff's was denied housing at Genesis.

19. As a direct result, Plaintiff has suffered distress and mental anguish, largely due to the frustration and pressure that has come from not obtaining this housing and the fear that this inaccurate information could affect further housing applications.

20. It is patently inaccurate and/or materially misleading to associate Plaintiff with negative accounts that do not belong to him.

21. Upon information and belief, had Defendant not erroneously and inaccurately reported this inaccurate account on Plaintiff's background report, Plaintiff would not have been denied his housing at Genesis.

22. Upon information and belief, Defendant fails to maintain and employ reasonable procedures to assure maximum possible accuracy of the consumer information it provides to employers.

23. Upon information and belief, Defendant knowingly and willfully maintains deficient procedures because reporting more information is more profitable than reporting less and potentially leaving information off of a consumer report.

24. For example, upon information and belief, Defendant allowed a negative account to appear on Plaintiff's consumer report without first confirming the accuracy of this information.

Upon information and belief, NOPSI's own records would reflect that this account does not belong to Plaintiff.

25. Defendant regularly seeks out and procures consumer credit information with the intention of including it in the consumer reports it sells for profit.

26. Instead of employing reasonable procedures as required by the FCRA, Defendant blindly collects information from unreliable third-party vendors to repackage and sell in its own employment screening products.

27. Alternatively, upon information and belief, Defendant buys consumer information from third-party vendors that do not have reasonable procedures in place to ensure that the information they sell is of maximum possible accuracy

28. Defendant, a sophisticated employment screening consumer reporting agency, is aware that consumer credit information is often inaccurate or incomplete.

29. Upon information and belief, Defendant purchased Plaintiff's information from one or more third-party vendors that merely compile consumer credit data from various online sources without verifying its accuracy.

30. Upon information and belief, none of Defendant's third-party vendors warrant the accuracy of the information they sell.

31. Upon information and belief, Defendant does not exercise due diligence in ensuring it is contracting with and/or utilizing reliable third-party vendors.

32. Upon information and belief, Defendant does not conduct periodic quality assurance audits to ensure that it is receiving reliable consumer information from its third-party vendors.

33. Upon information and belief, Defendant knew that the furnisher or third-party vendor provides inaccurate consumer data with some regularity.

34. Upon information and belief, Defendant blindly relied on the information provided by the furnisher or third-party vendor despite having reason to know it may be unreliable.

35. Upon information and belief, Defendant does not maintain reasonable procedures to assure it reports consumer information with maximum possible accuracy because it would be more expensive to independently verify the accuracy of the information it includes in its consumer reports.

36. It is wholly unreasonable for Defendant to maintain procedures that it knows often lead to inaccurate consumer reporting with grave consequences.

37. Despite knowing that its procedures are unreasonable, Defendant recklessly, knowingly, and/or negligently fails to employ procedures that assure that maximum possible accuracy of consumer information compiled and published in its consumer reports.

38. Upon information and belief, Defendant does not independently investigate the information it procures from third-party vendors before including it in consumers' background reports.

39. Instead, Defendant has unreasonably decided that it is entitled to rely completely on third-party vendors to ensure the information included in its consumer reports is accurate.

40. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to prevent.

41. Defendant knows that its services are used to make significant consumer decisions.

42. Upon information and belief, Defendant know or should have known that landlords make decisions on housing status based solely on the information contained in its consumer reports.

43. Upon information and belief, Defendant knew or should have known the negative impact that reporting a consumer's inaccurate credit information was likely to have on that consumer's housing status.

44. At common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

45. As a direct result of Defendant's conduct, Plaintiff was denied housing with Genesis.

46. As a further direct result of Defendant's conduct, Plaintiff suffered mental distress, including humiliation, embarrassment, and considerable stress from his precarious housing circumstances.

47. As a direct result of Defendant's inaccurate and/or misleading reporting, Plaintiff has suffered actual damages including, but not limited to: housing denial, monetary loss, wasted time, financial insecurity, defamatory harm to his reputation and emotional distress, including but not limited to, humiliation, embarrassment, stress, frustration, and mental anguish.

48. Defendant's violations of the FCRA were willful. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

49. Additionally, Defendant's violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1781o.

50. In any event, Defendant is liable for Plaintiff's reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## CAUSES OF ACTION

### COUNT I
### Violation of the FCRA, 15 U.S.C. § 1681e

51. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

52. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates.

15 U.S.C. § 1581e(b) (emphasis added).

53. LEASINGDESK violated § 1681e(b) because it failed to follow reasonable procedures to ensure the maximum possible accuracy of the information it attributed to Plaintiff in its consumer reports.

54. Specifically, LEASINGDESK willfully, intentionally, recklessly, and/or negligently violated § 1681e(b) by inaccurately and/or misleadingly reporting and associating a negative NOPSI utility account with Plaintiff, despite that this account does not belong to him and Plaintiff has never lived in New Orleans.

55. LEASINGDESK's misconduct was a direct and proximate cause of Plaintiff's injuries, as alleged herein.

56. LEASINGDESK is therefore liable to Plaintiff for its willful and/or negligent failures to follow reasonable policies and procedures.

57. As a result of LEASINGDESK's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual and punitive damages under 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a judgment:

i. Awarding Plaintiff statutory money damages, actual damages and punitive damages pursuant to 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

ii. Awarding attorneys' fees and costs as required by 15 U.S.C. §§ 1681n and/or 1681o, and other relief; and

iii. Awarding any other such relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: July 10, 2023

/s/ David S. Moyer
David S. Moyer, LLC
13551 River Road
Luling, LA 70070
(985) 308-1509
davidmoyerlaw@gmail.com

Yitzchak Zelman, Esq.
MARCUS & ZELMAN, LLC
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
(732) 695-3282 telephone
yzelman@marcuszelman.com
Pro Hac Vice Motion to be Filed
*Attorneys for Plaintiff*